UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BANKERS INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, APLC,<br><br>Defendant. | CIVIL ACTION NO.<br>1:23-CV-01163-JPB |

## ORDER

This matter is before the Court on Galloway, Johnson, Tompkins Burr & Smith, APLC's ("Defendant") Motion for Summary Judgment [Doc. 60]. This Court finds as follows:

### PROCEDURAL HISTORY

Bankers Insurance Company ("Plaintiff"), an insurance company, filed this action against Defendant, a law firm, on February 16, 2023. [Doc. 1-1]. Essentially, Plaintiff contends that Defendant committed legal malpractice in a separate suit involving one of Plaintiff's insureds. Plaintiff thus brings claims for legal malpractice and breach of fiduciary duty.

On May 6, 2024, Defendant filed the instant Motion for Summary Judgment. [Doc. 60]. The motion is ripe for review.

## BACKGROUND

The Court derives the facts of this case from Defendant's Statement of Material Facts [Doc. 60-1], Plaintiff's Response to Defendant's Statement of Material Facts [Doc. 83], Plaintiff's Statement of Additional Material Facts [Doc. 84], Defendant's Response to Plaintiff's Statement of Additional Material Facts [Doc. 89] and Defendant's Reply to Statement of Material Facts [Doc. 88].

In March 2015, the Crown Plaza Atlanta-Midtown Hotel ("the Hotel") hired Cajun Contractors, Inc. ("Cajun"), a general contractor, to perform construction work on the Hotel's pool. [Doc. 83, p. 2–3]. On July 20, 2015, one of Cajun's subcontractors was working on the project when a metal pipe fell from the pool deck and struck Max Laguerre in the head, face and arm. Id. at 3. Claiming negligence, on April 20, 2017, Laguerre sued Cajun and the Hotel in the State Court of DeKalb County ("the Underlying Suit"). Id. at 3–4.

Plaintiff, who insured Cajun pursuant to a commercial liability insurance policy,[1] retained Defendant to represent and defend Cajun in the Underlying Suit.

---

[1] The policy provided one million dollars in liability per occurrence and had a provision excluding punitive or exemplary damages. [Doc. 83, p. 2].

2

[Doc. 89, pp. 1–2]. Plaintiff paid the entirety of Cajun's legal fees, and Plaintiff had the right to change Cajun's defense counsel at any time. [Doc. 83, p. 5].

Todd LaDouceur and Tony Jones, both employed by Defendant, handled the defense of Cajun in the Underlying Lawsuit. Id. at 6. Even though Cajun and Laguerre exchanged various settlement offers, a settlement was not reached, and the case proceeded to trial.[2] Id. at 9–28. Ultimately, the jury returned a verdict in favor of Laguerre for $5,000,000. Id. at 30. As part of the verdict, the jury apportioned 100% of the fault to Cajun and awarded punitive damages to Laguerre in the amount of $500,336.[3] Id.

Cajun appealed the jury verdict, and Plaintiff hired a different law firm to handle the appeal. Id. at 31. On June 30, 2021, the Georgia Court of Appeals affirmed the verdict and judgment. [Doc. 84, pp. 12–13]. Thereafter, on August 10, 2021, Cajun filed a Petition for Writ of Certiorari with the Supreme Court of Georgia. Id. at 13. Before the court could render its decision on the pending writ, Plaintiff settled the Underlying Suit for $6,423,000. [Doc. 83, p. 34].

---

[2] A disputed fact exists as to whether Defendant ever recommended to Plaintiff that it should settle the Underlying Suit within the policy limits. [Doc. 83, pp. 26–27].

[3] The punitive damages were subsequently reduced to $250,000 pursuant to the statutory cap.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden[,] the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id. After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts that indicate summary judgment is improper

because a material issue of fact does exist.  Id.  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

Plaintiff brings two causes of action in this case:  a claim for legal malpractice and a claim for breach of fiduciary duty.  The Court will first address whether Defendant is entitled to summary judgment as to the legal malpractice claim.

### I. Legal Malpractice

To prevail on a legal malpractice claim, the plaintiff bears the burden of establishing three elements:  (1) the employment of the defendant attorney (i.e., an attorney-client relationship); (2) the failure of the attorney to exercise ordinary care, skill and diligence; and (3) that such failure was the proximate cause of damages to the plaintiff.  Cox-Ott v. Barnes & Thornburg, LLP, 898 S.E.2d 619,

625 (Ga. Ct. App. 2024), cert. granted (Sept. 4, 2024).[4] In its Motion for Summary Judgment, Defendant contends that Plaintiff cannot establish any of the above elements. In the analysis that follows, the Court will only focus on the first element.

The first element of a legal malpractice claim requires a plaintiff to show an attorney-client relationship. This showing is needed "because such a relationship is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence." Id. at 626. As a general rule, attorney-client relationships are typically matters of express contract. Id. However, an attorney-client relationship may be implied from the parties' conduct. Id. Indeed, "the employment of an attorney is sufficiently established when it is shown that 'the advice or assistance of the attorney is sought and received in matters pertinent to his profession.'" Estate of Nixon v. Barber, 796 S.E.2d 489, 492–93 (Ga. Ct. App. 2017). Moreover, an attorney-client relationship can be established by showing a "reasonable belief" on the part of the would-be client that he or she was being represented by the attorney. Id. at 493.

---

[4] The Supreme Court of Georgia held oral argument on February 5, 2025. An opinion has not yet been issued.

6

Defendant argues that Plaintiff cannot show an attorney-client relationship based on several undisputed facts, including: (1) that Plaintiff retained Defendant to represent Cajun, not Plaintiff; (2) that Defendant understood that it represented Cajun in the lawsuit, not Plaintiff;[5] and (3) that the Underlying Lawsuit did not name Plaintiff as a party and asserted no claims against Plaintiff. Conversely, Plaintiff contends that "[u]nder Georgia law, an attorney-client relationship exists between an insurer and the defense counsel it retains for its insured."[6] [Doc. 79, p. 8]. Plaintiff further asserts that the required relationship exists because it sought

---

[5] At his deposition, Stephen Messina, the Senior Vice President of Insurance Operations for Plaintiff, testified regarding the relationship between the parties. Specifically, Messina was asked whether he understood that Cajun was Defendant's client. [Doc. 71-1, p. 38]. Messina responded, "Absolutely." Id. at 39. Messina was then asked to confirm that Plaintiff was *not* Defendant's client. Id. Again, Messina responded, "Absolutely." Id. David Cribb, a retired claims adjuster for Plaintiff, was asked the following question at his deposition: "[a]nd the attorneys that you work with, would they be engaged to represent [Plaintiff] or engaged to represent the insured?" [Doc. 60-3, p. 46]. In responding, Cribb stated that the defense counsel represents the insured. Id. Given these admissions, it is clear to the Court that Plaintiff did not believe, or have a reasonable belief, that it was represented by Defendant.

[6] To support this assertion, Plaintiff cites to only one case. In that case, which involved a discovery dispute and not a malpractice action, the court held that "[w]hen an insurer hires an attorney to defend its insured under a duty to defend, and to minimize the damage for which it may be responsible, a tripartite attorney-client relationship is established among the insurer, the insured, and the attorney." Liberty Mut. Fire Ins. Co. v. APAC-SE, Inc., No. 1:07-CV-1516, 2008 WL 11320055, at *7 (N.D. Ga. May 16, 2008). This Court is not convinced that this holding represents current Georgia law.

and received legal advice from Defendant regarding case strategy and settlement of the Underlying Lawsuit.

Although insurance companies frequently hire law firms and/or attorneys to represent their insureds, neither the Supreme Court of Georgia nor the Georgia Court of Appeals has expressly addressed whether an insurer can bring a legal malpractice claim against an attorney that it hired to represent its insured.[7] However, Cox-Ott, a recent decision from the Georgia Court of Appeals, is instructive. 898 S.E.2d at 623. In that case, the plaintiff purchased a $4 million insurance policy, which the plaintiff then placed in a family trust. Id. Believing that she was defrauded when she purchased the policy, the plaintiff hired a law firm to file suit against the insurance company on behalf of the family trust. Id. When the plaintiff hired the law firm, she signed an engagement letter which indicated that the law firm represented the family trust. Id. at 624. After the case

---

[7] Neither party cited to any Georgia cases specifically addressing this issue, and the Court was unable to locate any Georgia cases. Although not many jurisdictions have addressed the attorney-client relationship in this context, in the majority of jurisdictions that have, "the retaining insurer may sue the law firm directly as its client." Hartford Ins. Co. of Midwest v. Koeppel, 629 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009) (collecting cases). At least three jurisdictions (Texas, Michigan and Washington), however, "preclude a direct legal malpractice liability claim by an insurer against the attorney retained to represent an insured." Id.; see also Stewart Title Guar. Co. v. Sterling Sav. Bank, 311 P.3d 1, 5–6 (Wash. 2013) (holding that the insurance company could not pursue a malpractice claim against the law firm that it hired to represent an insured).

against the insurance company was dismissed, the plaintiff—both in her individual capacity and on behalf of the family trust—sued the law firm alleging legal malpractice and breach of contract. Id. at 623.

In pertinent part, the law firm moved for summary judgment and argued that the plaintiff's legal malpractice claim failed as a matter of law because the law firm did not represent the plaintiff individually in the underlying suit. Id. at 625. The plaintiff, on the other hand, asserted that an attorney-client relationship existed because "she personally signed the representation agreement," the law firm "communicated solely with her," the trust "was merely a vehicle to hold the policy" and "she personally paid all invoices for [the law firm's] services." Id. at 626.

After determining that no attorney-client relationship existed, the trial court granted the law firm's motion for summary judgment, which the appellate court affirmed. Id. In affirming the trial court, the Georgia Court of Appeals held that the plaintiff "failed to meet her burden of establishing an attorney-client relationship." Id. at 627. The court reasoned that "the record clearly show[ed]" that the law firm represented the trust and not the plaintiff individually because (1) the engagement letter only named the trust as the client and (2) the plaintiff was not named individually as a party to the underlying suit. Id. at 626. Significantly,

9

the court held that "[t]he fact that [the plaintiff] made the insurance payments, communicated with [the law firm], and paid [the law firm's] legal fees is consistent with her role as the trustee for [the trust]." Id.

The analysis in Estate of Nixon, another decision from the Georgia Court of Appeals, is also somewhat instructive. 796 S.E.2d at 491. There, two parents hired an attorney to represent their son in a criminal action for selling and distributing marijuana. Id. Dissatisfied with the representation, the parents sued the attorney for legal malpractice. Id. In trying to establish an attorney-client relationship, the parents asserted that the attorney "provided legal representation, assistance and advice" directly to them, "were paid by [them], took direction from [them], communicated with and reported to [them], engaged in strategy discussions with [them] and were ultimately fired by [them]." Id. at 493.

The Georgia Court of Appeals affirmed the trial court's finding that no attorney-client relationship existed because the parents "could not have reasonably believed that [the attorney] represented them when all communications and representations were made in the course of (and regarded) [the attorney's] representation of their son in defense against his criminal charges." Id. at 494. Ultimately, the court held that the "attorney-client relationship is personal, not vicarious." Id. at 495.

The Court agrees with Defendant that Plaintiff cannot show an attorney-client relationship. Here, Plaintiff has done nothing more than assert that it "sought and received advice" from Defendant "regarding case strategy and settlement" of the Underlying Suit and that it "paid [Defendant] for its representation of Cajun" in the Underlying Suit. [Doc. 79, p. 9]. In the Court's view, these facts alone are not sufficient to establish the required attorney-client relationship. See Estate of Nixon, 796 S.E.2d at 493–95 (finding advice, strategy and payment of legal fees insufficient to establish relationship); see also Cox-Ott, 898 S.E.2d at 627–28 (determining communication and payment of legal fees inadequate to support relationship). Moreover, the Court cannot ignore that Plaintiff admitted that Defendant represented Cajun (not Plaintiff) and that Plaintiff was not named in the Underlying Suit. Under these facts, Plaintiff has failed to demonstrate that it had an attorney-client relationship with Defendant. As such, to the extent that Defendant argues that it is entitled to summary judgment as to the legal malpractice claim, the motion is **GRANTED**.

## II. Breach of Fiduciary Duty

Defendant asserts that it is entitled to summary judgment as to Plaintiff's claim for breach of fiduciary duty. Defendant argues that under Georgia law, the breach of fiduciary duty claim must be dismissed because it is merely duplicative

of the legal malpractice claim.[8]  The Court disagrees that Georgia law mandates dismissal.  Indeed, the Supreme Court of Georgia recently clarified that a plaintiff is "permitted to pursue alternative theories of relief based on causes of action with different elements, even when those causes of action arise from the same underlying conduct."  Titshaw v. Geer, 907 S.E.2d 835, 845 (Ga. 2024).[9]  This is true even for claims involving breach of fiduciary duty and legal malpractice.  See Both v. Frantz, 629 S.E.2d 427, 431 (Ga. Ct. App. 2006) (rejecting argument that a breach of fiduciary duty claim was subject to dismissal as duplicative, especially where the defendant law firm argued that there was no attorney-client relationship

---

[8] Without providing any additional argument or support, Defendant also asserts that "the record is void of any evidence reflective of [Defendant] owing [Plaintiff] a fiduciary duty" and, even if it did, "[Plaintiff's] alleged damages were not proximately caused by [Defendant]."  [Doc. 60-18, p. 25].  Because these arguments are not supported either factually or legally, the Court does not have an obligation to consider them.  Brewfab, LLC v. 3 Delta, Inc., 580 F. Supp. 3d 1201, 1208 (M.D. Fla. 2022) (holding that courts need not consider cursory arguments that are not supported); see also Maples v. Campbell, No. 5:03-CV-2399, 2006 WL 8438017, at *17 (N.D. Ala. Sept. 29, 2006) (finding that the court was not required to "consider unsupported and undeveloped issues").  Thus, to the extent that Defendant seeks summary judgment on these alternative theories, Defendant's request is **DENIED**.

[9] In Titshaw, the court specifically disapproved the line of cases which held that "claims are always duplicative of legal malpractice claims, [and subject to dismissal], if based on the same facts."  907 S.E.2d at 845.  Notably, Titshaw overruled Oehlerich v. Llewellyn, 647 S.E.2d 399 (Ga. Ct. App. 2007)—one of the cases upon which Defendant relies.  In Oehlerich, which is no longer good law, the court held that a plaintiff could not maintain a separate cause of action for breach of fiduciary duty where it was a duplication of the legal malpractice claim.  647 S.E.2d at 402.

during the time in question). Because Plaintiff is permitted to pursue an alternative theory of relief, summary judgment is not appropriate. Thus, to the extent that Defendant seeks summary judgment as to Plaintiff's claim for breach of fiduciary duty, the motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 60] is **GRANTED IN PART** and **DENIED IN PART**. The parties are **HEREBY ORDERED** to file the Consolidated Pretrial Order required by Local Rule 16.4 within twenty-one days of entry of this Order. The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment. If a Consolidated Pretrial Order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the twenty-one-day period.

If the parties would like a stay of this deadline to allow them to conduct mediation, they may file a motion to that effect. The parties are reminded that the

Court can refer this case to mediation before a Magistrate Judge at no cost. If the parties would like such a referral, they may make such a request in the motion.

**SO ORDERED** this 7th day of February, 2025.

_____
J. P. BOULEE
United States District Judge